UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS JUSTIN CUELLAR,<br><br>    Plaintiff,<br><br>    v.<br><br>FRESNO COUNTY SHERIFF, et al.,<br><br>    Defendants. | Case No.: 1:20-cv-00707-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 28) |

Plaintiff Travis Justin Cuellar is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion-related motion for summary judgment, filed August 26, 2021.

**I.**

**PROCEDURAL BACKGROUND**

This action is proceeding against Defendants Bruton, Cisneros, and John Doe No. 1 for excessive force.

On May 14, 2021, Defendants Bruton and Cisneros filed an answer to the first amended complaint. (ECF No. 24.)

On May 17, 2021, the Court issued the discovery and scheduling order. (ECF No. 25.)

1

On August 26, 2021, Defendants Bruton and Cisneros filed the instant motion for summary judgment. (ECF No. 28.) Plaintiff filed an opposition on September 2, 2021, and Defendants filed a reply on September 9, 2021.

## II.

## LEGAL STANDARD

### A.     Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 1174, 136 S.Ct. 1850, 1858 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B.     Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

**III.**

**DISCUSSION**

**A.  Fresno County Jail Exhaustion Process**

Fresno County Jail (FCJ) has inmate grievance procedures and inmates are provided with an Inmate Orientation Handbook that describes the process upon admission to the facility. (Declaration of Captain Russell Duran ) ("Duran Decl.") ¶¶ 3, 4, ECF No. 28-4.) The FCJ inmate grievance system involves a two-tier process which allows inmates to alert FCJ to grievances concerning any condition of confinement at the jail, including o conduct, disciplinary actions, food, mail, medical care, legal services and telephone. (Id. at ¶ 5.) An inmate may also pursue a grievance for any alleged or

threatened act of retaliation by FCJ staff. (Id. at ¶ 6.) The inmate is required to provide specific information related to the grievance, including the name of the employee involved, the identity of any witnesses, the date and time of the incident being grieved, the specific type of grievance which is limited to only type per grievance, and a description of the important details of the alleged problem or event, and other relevant information supporting the grievance. (Id. at ¶ 7.) An inmate has 14 days from the date of the alleged incident to submit a grievance form. (Id. at ¶ 9.) Once a grievance form is received from an inmate, it is placed in the grievance bin in the distribution room prior to the end of the employee's shift, even if the grievance has been resolved or is withdrawn by the inmate. (Id. at ¶ 11.) After the initial investigation, the investigating staff member will make a recommendation to either sustain or not sustain the grievance. (Id. at ¶ 12.) The grievance form and the recommendation is then reviewed by a Lieutenant or Manager/Supervisor who makes the final determination to either sustain or not sustain the grievance. (Id.) The grievance shall be investigated and processed for review within a reasonable amount of time after submission, typically within fourteen (14) calendar days. (Id. at ¶ 14.) The inmate is provided a copy of the written response, entitled "Inmate Grievance Review Report." (Id. at ¶ 15.) An inmate who is not satisfied with the outcome received by the grievance process may submit an appeal within five calendar days from the date the response was received. (Id. at ¶ 17.) The appeal forms are submitted to the "Bureau Commander" for review and response. (Id. at ¶ 19.) The Bureau Commander issues a written response, either affirming or reversing the decision of the Lieutenant within thirty workdays or as soon as practicable. (Id. at ¶ 20.) The result of the appeal is final and constitutes exhaustion within the agency. (Id. at ¶ 21.)

### A. Statement of Undisputed Facts[1]

1. At all times relevant to the alleged harm forming the basis of Plaintiff's complaint, Plaintiff was a sentenced detainee at the Fresno County Jail. (Duran Decl. at ¶ 1.)

2. The Fresno County Sheriff's Office is responsible for the overall operation of FCJ. (Id. at ¶ 2.)

3. At all times relevant to this action FCJ had in place established inmate grievance

---

[1] Hereinafter referred to as "UF."

4

1  processes and procedures pursuant to Section 1073 of Title 15 of the California Code of Regulations,
2  for use and accessible by inmates twenty-four hours a day, seven days a week, to include written and
3  adopted official Department Policy entitled "Policies and Procedures No. E-140 – Inmate Grievance
4  Procedures," as well as an "Inmate Orientation Handbook," also describing the process.  (Id. at ¶ 3;
5  Compl. at 3, First Amended Complaint (FAC) at 2.)

6      4.    At all times relevant to this action, Plaintiff was aware that FCJ had in place, the
7  established inmate grievance processes and procedures, as upon booking into FCJ every inmate,
8  including Plaintiff, was/is provided a copy of the same as part of the inmate Handbook, and because
9  Plaintiff had submitted an unrelated grievance the month before the incident alleged in his FAC.
10 (Duran Decl. at ¶ 4; Compl. at 3; FAC at 2; Declaration of Anthony Gomez ("Gomez Decl.") Ex. A, at
11 time stamp marks 8:26-10:07; 41:37-43:30; 1:09:42-1:10:22; 1:14:30-1:15:00.)

12     5.    The FCJ inmate grievance system involves a structured two-stage process designed to
13 allow inmates to alter FCJ to grievances concerning any condition of confinement at the Jail,
14 including, but not limited to, officer conduct, disciplinary actions, food, mail, medical care, legal
15 services, and telephone.  (Duran Decl. at ¶ 5.)

16     6.    Pursuant to FCJ grievance policies and procedures, an inmate may also pursue any
17 alleged or threatened act of retaliation by FCJ staff through the inmate grievance procedure.  (Id. at ¶
18 6.)

19     7.    Proper compliance with Inmate Grievance procedures and Form, J-105A, requires the
20 inmate to provide specific information related to a grievance, notably: the name of the employee
21 involved in the grievance (if applicable), the identity of any witnesses, the date and time of the
22 incident being grieved, the specific type of grievance limited to one type per grievance, and a
23 description of the important details of the alleged problem, events, reasons, and other relevant
24 information that led to the filing of the grievance.  (Id. at ¶ 7.)

25     8.    Generally, the two progressive stages of the formal process include: 1) submission of a
26 timely, properly completed and signed Inmate Grievance Form (J-105A) to floor staff, where an initial
27 attempt can be made to resolve complaints or problems through dialogue and discussion or under
28 certain qualifying circumstances directly to the Bureau Command; and 2) if necessary when unable to

resolve the issue at the first level: submission of a timely and properly completed and signed second-level Inmate Grievance "Appeal" Form (J-105B).  (Id. at ¶ 8.)

9. Inmate Grievance Form, J-105A, as well as the inmate Handbook, also state that an inmate has only 14-days from the date of the alleged incident to submit the grievance.  (Id. at ¶ 9.)

10. Pursuant to FCJ grievance policies and procedures, failure to submit a grievance within 14-days of an alleged incident or occurrence is considered abandonment of the grievance and is grounds for automatic rejection without investigation.  (Id. at ¶ 10.)

11. Once a grievance form is received by FCJ staff, even those withdrawn or otherwise immediately resolved by floor staff, they are placed in the grievance bin in the distribution room prior to the end of the shift.  (Id. at ¶ 11.)

12. Based upon the findings of the initial investigation into a submitted grievance, the investigating staff member shall make a recommendation to either sustain or not sustain the inmate grievance, after which the grievance along with this recommendation from the investigating staff member shall be reviewed by the Lieutenant or their Manager/Supervisor who will make a final determination to either sustain or not sustain the grievance.  (Id. at ¶ 12.)

13.  FCJ grievance policies and procedures also provide for a "Confidential" submission of an inmate grievance form direct to the Bureau Captain, but is reserved for 1) matters that are "sensitive and that involve danger to the inmate's safety or well-being if the information became known"; 2) when the content of the grievance "is of a nature which would pose a threat to the safety of the inmate, staff, or other inmates if the grievance were filed through established procedures"; or 3) the normal grievance time frames, would subject the inmate to substantial risk of personal injury, or cause other serious and irreparable harm."  (Id. at ¶ 13.)

14. FCJ grievance policies and procedures provide that grievances shall be investigated and processed for review within a reasonable amount of time after submission, usually within fourteen (14) calendar days.  (Id. at ¶ 14.)

15. Upon conclusion of its review of an inmate grievance form, FCJ provides the inmates with a copy of its written response, entitled "Inmate Grievance Review Report."  (Id. at ¶ 15.)

16. At the times relevant herein there was a separate grievance "Appeal" process,

1 consisting of proper completion and timely submission of an inmate grievance "Appeal" Form (J-
2 105B). (Id. at ¶ 16.)
3       17. An inmate who was not satisfied with FCJ's "response" to his inmate grievance (J-
4 105A) could submit an Inmate Grievance Appeal form "within five (5) calendar days from the date of
5 receipt of the response." (Id. at ¶ 17.)
6       18. Pursuant to FCJ grievance policies and procedures, an Appeal is a form submitted by
7 the inmate only in response to (i.e., after) the inmate's receipt of an "Inmate Grievance Review
8 Report." (Id. at ¶ 18.)
9       19. At the time relevant herein, FCJ routed all inmate grievance "Appeal" forms to the
10 "Bureau Commander" for review and response. (Id. at ¶ 19.)
11       20. At the times relevant herein, FCJ grievance policies and procedures provided that
12 "within thirty (30) workdays or as soon as reasonably practicable," the Bureau Commander would
13 issue a written response on the inmate's Appeal form, either affirming or reversing the decision of the
14 Lieutenant and then provide a copy to the inmate. (Id. at ¶ 20.)
15       21. At the times relevant herein, the "Bureau Commander's" decision as to the inmate's
16 grievance "Appeal" is final and, unless otherwise noted in the Commander's written response, deemed
17 an exhaustion of the issue(s) accepted for Appeal. (Id. at ¶ 21.)
18       22. While FCJ procedures provided that a defective grievance could be denied on
19 procedural grounds without addressing the substantive issues, if the defect on which the rejection was
20 based was correctable, the inmate is entitled to a reasonable time extension within which to correct the
21 defect and resubmit the grievance or appeal, if necessary. (Id. at ¶ 22.)
22       23. FCJ grievance policies and procedures provide that "ordinarily, five (5) calendar days
23 from the date of return to the inmate was reasonable for resubmission" of a corrected grievance. (Id.
24 at ¶ 23.)
25       24. FCJ grievance policies and procedures also provide that staff had discretion to accept,
26 and were to consider accepting, a grievance of appeal "that raised a sensitive or problematic issues,
27 even though that submission may have been somewhat untimely. (Id. at ¶ 24.)
28       25. FCJ's Inmate Handbook received by inmates upon booking, warns that under the

1 Prison Litigation Reform Act of 1996 (PLRA), inmates must completely exhaust the jail's internal grievance and appeals processes prior to filing any complaint with the court.  (Id. at ¶ 25.)

26. Plaintiff filed his original complaint on May 8, 2020, more than two years after the events making up his complaint against Defendants.[2]  (ECF No. 1; Duran Decl. at ¶ 26.)

27. Plaintiff filed the operative, first amended complaint, on June 23, 2020, more than two and one-half years after the events making up his complaint against Defendants.  (ECF No. 7; Duran Decl. at ¶ 27.)

28. FCJ records confirm there were 16 staff members that worked at FCJ in Plaintiff's housing unit during the 30 days between the time of the incident alleged by Plaintiff (January 28, 2018) and the date he was transferred to Madera County a month later (February 28, 2018).  This includes day shifts (A-1, A-2 Platoons) and all overtime coverage, as well as night shifts (B-1, B-2 Platoons) and all overtime coverage – 7 days a week, day shifts and night shifts.  (Duran Decl. at ¶ 29.)

29. Defendants worked 12 hours shifts 3 days a week and a 4th day a week every other week.  Both officers in question are assigned to the B-2 Platoon and therefore, have T/W/TH and every other Monday off.  B-2 is assigned to work from 1800 hours (p.m.) to 0600 hours (a.m.).  Inmates are likely to have less contact with floor officers during the night-time frame of 1800-0600 due to normal sleeping hours and locked down time.  (Id. at ¶ 30.)

30. There were 16 days during this 30-day period where Defendants were off duty at the exact same time.  There were 95 different officers who worked on the 16 days where Defendants were on regular days off.  (Id. at ¶ 31.)

31. There were 95 different on-duty jail personnel—other than the Defendants Plaintiff

---

[2] Under the "mailbox rule," when a pro se inmate gives prison authorities a pleading to mail to court, the Court deems the pleading constructively "filed" on the date it is signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to § 1983 suits filed by pro se prisoners").

alleges were involved in the subject incident—that were working in Plaintiff's housing and to whom Plaintiff could have, during any of those work shifts, weekday, weekend, and night or day, delivered or at least sought to deliver a properly completed grievance related to the alleged incident, in addition to use of a confidential communication to the Bureau Commander. (Id. at ¶ 32.)

32.  Plaintiff admits that FCJ had an available administrative remedy process during his incarceration at FCJ and relevant to the claims in his complaint, but he did not utilize the process. (Compl. at 3; FAC at 2; Gomez Decl. Ex. A., at time stamp marks 8:26-10:07; 41:37-43:30; 1:09:42-1:10:22; and 1:14:30-1:15:00.)

33.  At all times relevant to this action, FCJ grievance coordinators accepted, reviewed, and tracked all non-medical inmate J-105 grievances and appeals submitted for review by inmates pursuant to FCJ's inmate grievance processes and procedures, including confidential grievance and appeal communications received by the Bureau Commanders. (Duran Decl. at ¶ 34.)

34.   FCJ records confirm Plaintiff's admissions that he never filed an authorized grievance (confidential or otherwise) or appeal according to these procedures for the claims raised in his complaint against Defendants prior to filing his complaint, over two years from the alleged harm at FCJ.  (Id. at ¶ 35; Gomez Decl. Ex. A, at time stamp mark 1:09:42-1:10:04.)

35.  Plaintiff claims that Defendants threatened him that "he would suffer if he grieved the issue."  (Compl. at 3; FAC at 2.)

**B.     Analysis of Defendants' Motion**

Defendants argue that Plaintiff admits he did not complete the required exhaustion process prior to bringing this action, and he cannot meet his burden to show that there was anything particular about his case that excused his obligation to complete the exhaustion process prior to filing suit.

In opposition, Plaintiff argues that although FCJ has a grievance procedure, he could not utilize the process because Defendants threatened retaliation.  Plaintiff contends that after Defendants used excessive force against him to get him to answer their questions, he "was afraid to address the attack to any other officer, because the defendants whom att[a]cked plaintiff, were of multiple levels of authority. Defendant Bruton was the corporal on duty, who is/was Defendant Cisneros' superior officer. Plaintiff felt that if the corre[]ctional officer attacked Plaintiff, and the correctional officers

9

superior not only didn't stop the attack, but participated, Plaintiff could not for surely trust [sic] that another officer or superior, wouldn't act in the same manner, or bring to the attention of Defendants, that Plaintiff reported the attack." (ECF No. 30 at 2-3.)

As an initial matter, in their reply brief, Defendants object to Plaintiff's opposition because it does not comply with Federal Rule of Civil Procedure 56 or Local Rule 260.

Under this Court's local rules, "[e]ach motion for summary judgment or summary adjudication shall be accompanied by a 'Statement of Undisputed Facts' that shall enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any ... document relied upon to establish that fact." Local Rule 260(a). In addition, Defendants point out that Plaintiff's opposition is not signed under penalty of perjury. A party opposing a motion for summary judgment is required to "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed" and include "with each denial a citation to the particular portions of any ... document relied upon in support of that denial" and is "responsible for the filing of all evidentiary documents cited in the opposing papers." Local Rule 260(b) "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). A Court may also disregard any unsworn statements in connection with summary judgment. Soto v. Sweetman, 882 F.3d 865, 873 (9th Cir. 2018) (noting that "unsworn district court responses to the defendants' motion for summary judgment" did not meet Rand's requirements and was "not competent evidence" for purposes of summary judgment").

While Plaintiff did not strictly comply with Local Rule 260(b), his opposition brief addresses and responds directly to Defendants' motion for summary judgment regarding exhaustion of the administrative remedies in relation to his claim of retaliation. In addition, Plaintiff included his alleged fear of retaliation in the operative and verified first amended complaint, stating "I was threatened by the attacking officers that I would suffer if I briefed the issue. I was transferred to Madera County Dept. of Corrections, days to weeks later, where I immediately reported the incident to authorities, who immediately reported it to Fresno County Jail Classification. I also reported it to P.R.E.A, Fresno County Sheriff internal investigation, and also filed a govt. tort claim to Fresno Board

10

of Supervisors." (FAC at 2.) "A verified complaint may be used as an opposing affidavit under Rule 56." Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995). While such a complaint "must be based on personal knowledge and set forth specific facts admissible in evidence" in order "to function as an opposing affidavit," *id.*, many relevant facts asserted in opposition are based on Plaintiff's personal knowledge. Additionally, the Court is mindful that "courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

Given Plaintiff's status as a *pro se* inmate, his verified complaint, and the assertions set forth in his opposition, the Court concludes that it may properly consider the factual assertions set forth in Plaintiff's opposition to the extent that they also appear in Plaintiff's verified first amended complaint and reasonably appear to be based on his personal knowledge. The Court addresses such facts in its analysis below. See Fraser v. Goodale, 342 F.3d at 1032, 1036-1037 (9th Cir. 2003) (the court reversed a grant of summary judgment, holding that the district court should have considered unsworn, arguably inadmissible statements written by the plaintiff in a diary. 342 F.3d 1032, 1036–37 (9th Cir. 2003); see also Rosenfeld v. Mastin, No. CV 11-7002-DOC(E), 2013 WL 5705638, at *5 (C.D. Cal. Oct. 15, 2013) (considering plaintiff's unsworn statements made in the third amended complaint and in the opposition because plaintiff "plainly has personal knowledge of the content of these statements and could present the statements in admissible form through his own testimony at trial," but not considering plaintiff's speculative statements regarding a particular claim where there was no indication plaintiff had personal knowledge of the claim); Wilson v. Med. Servs. Div., No. 1:14cv2444-JAH (RBB), 2017 WL 1374281, at *7 (S.D. Cal. Apr. 13, 2017) (report and recommendation denied in part on other grounds) (finding that plaintiff failed to show a triable issue of material fact even after considering plaintiff's opposition to the motion for summary judgment that was not signed under penalty of perjury) (citing Rosenfeld, 2013 WL 5705638 at *5); Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001) (stating that "this [C]ircuit has held that self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory.") (citing United States v. Shumway, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).

1      Plaintiff has not provided any admissible evidence demonstrating his failure to exhaust should
2 be excused. The Ninth Circuit has recognized that "the threat of retaliation for reporting an incident
3 can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure
4 to exhaust administrative remedies." McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015). To show
5 that fear of retaliation rendered administrative remedies unavailable, a prisoner must show both a
6 subjective and an objective basis for that fear. Id. at 984. To meet the subjective prong, the prisoner
7 must "provide a basis for the court to find that he actually believed prison officials would retaliate
8 against him if he filed a grievance." Id. at 987. To meet the objective prong, "there must be some basis
9 in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would
10 have believed that the prison official's action communicated a threat not to use the prison's grievance
11 procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner
12 from filing a grievance." Id.; see also Rodriguez v. County of Los Angeles, 891 F.3d 776, 792 (9th
13 Cir. 2018).

14      Plaintiff admits that FCJ had an available administrative remedy process during his
15 incarceration at FCJ and relevant to the claims in his complaint, but he did not utilize the process. (UF
16 32.) It is undisputed that FCJ records confirm there were 16 staff members that worked at FCJ in
17 Plaintiff's housing unit during the 30 days between the time of the incident alleged by Plaintiff
18 (January 28, 2018) and the date he was transferred to Madera County a month later (February 28,
19 2018). This includes day shifts (A-1, A-2 Platoons) and all overtime coverage, as well as night shifts
20 (B-1, B-2 Platoons) and all overtime coverage – 7 days a week, day shifts and night shifts. (UF 28.)
21 Defendants worked 12 hours shifts 3 days a week and a 4th day a week every other
22 week. Both officers in question are assigned to the B-2 Platoon and therefore, have T/W/TH and
23 every other Monday off. B-2 is assigned to work from 1800 hours (p.m.) to 0600 hours (a.m.).
24 Inmates are likely to have less contact with floor officers during the night-time frame of 1800-0600
25 due to normal sleeping hours and locked down time. (UF 29.) There were 16 days during this 30-day
26 period where Defendants were off duty at the exact same time. There were 95 different officers who
27 worked on the 16 days where Defendants were on regular days off. (UF 30.) There were 95 different
28 on-duty jail personnel—other than the Defendants Plaintiff alleges were involved in the subject

incident—that were working in Plaintiff's housing and to whom Plaintiff could have, during any of those work shifts, weekday, weekend, and night or day, delivered or at least sought to deliver a properly completed grievance related to the alleged incident, in addition to use of a confidential communication to the Bureau Commander.  (UF 31.)

Construing the facts in the light most favorable to Plaintiff as this Court must on summary judgment, the Court finds that Plaintiff has sufficiently alleged that threats from jail deputies deterred him from filing a grievance on the use of excessive force.   However, the Court finds that Plaintiff has not met his burden of demonstrating that his fear of retaliation from these threats was objectively reasonable. "That is, there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." McBride, 807 F.3d at 987.  Plaintiff presents only general and unsubstantiated fears about possible retaliation.  Indeed, the audio interview of Plaintiff by Sheriff Detective Anthony Gomez does not reveal any verbal or actual statement, threat, other action or reference by Defendants or other FCJ official, aimed at anything, much less the filing of a grievance.  McBride, 807 F.3d at 988.  As in McBride, Plaintiff's generalized allegations are based solely on the alleged excessive force incident in January 2018 which is insufficient to render FCJ's administrative remedies effectively unavailable.  McBride, 807 F.3d at 988  ("The only potentially relevant fact [the prisoner] alleges is that he was beaten, and that the guards (who beat him) made the statements. If this fact, standing alone, were sufficient, any hostile interaction between a prisoner and prison officials would render the prison's grievance system unavailable. There is no reason to allow inmates to avoid filing requirements on the basis of hostile interactions with guards when the interaction has no apparent relation to the use of the grievance system. Hostile interaction, even when it includes a threat of violence, does not necessarily render the grievance system 'unavailable.'").

Plaintiff has simply not gone beyond showing general hostilities and shown that a reasonable prisoner of ordinary firmness would have believed that Defendants said or done something that "communicated a threat not to use the prison's grievance procedure and that the threatened retaliation

was of sufficient severity to deter a reasonable prisoner from filing a grievance." <u>McBride</u>, 807 F.3d at 987; <u>compare</u> <u>Rodriguez v. City of Los Angeles</u>, 891 F.3d at 793 (finding subjective and objective elements meet where inmate claimed that on day he turned in a complaint, a sergeant delivered a warning mentioning another inmate who had been badly beaten and assaulted with razor blades, stating " 'that's how rats are treated when they lie about my deputies,'" the inmate could be charged with another crime, and "for your own good, I'm going to forget you turned in this complaint. Keep your mouth shut.'"), <u>with</u> <u>McBride</u>, 807 F.3d at 988 (an excessive force action where inmate alleged guards threatened him after a beating, stating he was "lucky" because his injuries "could have been much worse" did not meet the objective element because an inmate would not have reasonably understood from the statements that the prison official intended to retaliate if an appeal was filed); <u>see also</u> <u>Sealey v. Busichio</u>, 696 F. App'x, 779, 780-81 (9th Cir. 2017) (finding claim that medical staff threatened the inmate that if he "caused any trouble abo the medical care, [he] would be transferred to another institution where really bad inmates were and [he] would not receive any medical care" meet the subjective prong but the evidence did not support the objective prong because the statement did not reference the grievance system and a reasonable prisoner would not have understood the statement to mean retaliation would occur if a grievance was filed). Accordingly, Plaintiff has failed to make the showing necessary under <u>McBride</u> to show that there was a threat of retaliation that rendered the administrative remedies effectively unavailable.

Pursuant to FCJ's grievance procedure, filings through a third party, filing a Government Tort Claim, reporting an incident to Madera County Jail or to the Fresno County Board of Supervisors, filings to Fresno County Risk Management, to FCJ Classification, or to Fresno County Sheriff's Office of Internal Affairs, do not suffice to exhaust the administrative remedies. (UF 7-8; Duran Decl. ¶ 37); <u>see, e.g.</u>, <u>Fuqua v. Ryan</u>, 890 F.3d 838, 844 (9th Cir. 2018) (citing <u>Woodford v. Ngo</u>, 548 U.S. at 90-91) (inmate's two letters to prison officials did not exhaust his administrative remedies as exhaustion requires complying with a particular agency's "critical procedural rules[.]"); <u>Martinez v. Tilton</u>, No. 1:10-cv-01501-SKO PC, 2013 WL 5670869, at *3 (E.D. Cal. 2013) ("the prisoner' inmate appeals process and the Government Claims Act process are separate processes and there is no support for a finding that the allegedly improper cancellation of Plaintiff's inmate appeal had any effect

14

whatsoever on his ability to timely present his Government Claims Act claim."). Thus, although Plaintiff contends that he was transferred to the Madera County Jail approximately one month after the incident, where he wrote a report about the incident which was forwarded by sergeant Quick and lieutenant Followill to the classification department at FCJ, submission of a complaint to the classification unit does not comply with FCJ's authorized administrative procedures. (Duran Decl. ¶ 37.) In addition, Plaintiff's hand-written complaint submitted to the Fresno County Sheriff's Internals Affairs Unit, on or about January 22, 2020, is not related to the FCJ's grievance process and does not constitute proper exhaustion. (Gomez Decl. ¶ 7; Duran Decl. ¶ 37); see also Rivera v. Goord, 253 F.Supp.2d 735, 752 (S.D.N.Y. 2003) (finding plaintiff did not exhaust administrative remedies when he could not demonstrate that the outcome of an investigation produced a favorable resolution for him). The prison's requirements, not the PLRA, defines the boundaries of proper exhaustion. Akhtar v. Mesa, 698 F.3d 1202, 1211 (9th Cir. 2012) (citing Jones v. Bock, 549 U.S. at 218) ("[T]he level of detail necessary in a grievance to comply with a prison's grievance procedures will vary from system to system and claim to claim[.]"); see also Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"). Accordingly, Defendants' motion for summary judgment should be granted, and the instant action should be dismissed, without prejudice, for failure to exhaust the administrative remedies.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. The instant action be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**January 25, 2022**__

UNITED STATES MAGISTRATE JUDGE